Thank you, your honors. May it please the court. I'm Cynthia Jones. I'm representing the appellate, Mr. Mondragon. I would like to reserve three minutes for rebuttal and I will watch my time. All right, thank you. Thank you. Mr. Mondragon brings two issues to this court today, but I would like to focus in on one, and that is whether Mr. Mondragon would possess a firearm in furtherance of the underlying drug trafficking charge. Congress informs this court that the mere presence of a firearm in an area where the criminal act occurs is not enough. It's not sufficient for imposing this five-year mandatory sentence. Rather, the government must show specific facts to tie the in furtherance to the underlying crime. So what we have here is the question of the nexus, and Congress set forth the inference that cannot be made, and that is possession or presence of a firearm, just because you happen to be a drug trafficker, is not enough to impose the five-year mandatory sentence. The presence of a firearm in conjunction with the presence of drugs nearby. I think that has to do, again, the problem is with the nexus, that if we look to, we know this court has looked at from Krauss to Norwood, and there has been a totality of the circumstances approach, where just because a gun was in proximity to the drugs was not enough. There has to be... So what is your strongest case to support your argument that a gun in the proximity of drugs is not enough to show a nexus? In the proximity of a lot of drugs, it's not enough to show a nexus. At a different location than where there were other drugs, too, and he took them to the gun. Told him there was a gun. So you got all those facts. Yes, we do. We have a lot of facts. I think the strongest case is if we start with the legislative history, and I think the easy... Give me a case citation first, and then we'll go to the legislative history, but give me your strongest case authority, the strongest case in the Ninth Circuit that supports your argument that a lot of drugs in proximity to the drugs is not enough. Let's start with that. Let's start with that. So the easy answer, the simple answer would be to point you to Mann or to Rios, but rather what I would like to do is point you to the range of cases, because in each case, what the court is struggling with, there's not a bright line here. It's fact-specific for each case. So we can look at... Doesn't that make it more difficult for you, the fact that it's fact-specific and no line has been drawn that suggests that your argument should prevail? I don't think so, because I think what this court can look at is what were previous courts concerned about. So in Krauss, it was the first time that the Ninth Circuit had dealt with the in furtherance under Section 924. And in that case, they actually looked for guidance to the Sixth Circuit, Judge Gilman, and they found that the inference of five firearms, three of them loaded in proximity to a major amount of drugs, would be an inference that they were using those firearms to protect those drugs. Then it rotates to Mann, where you have a meth-manufacturing tent, and the defendants show up and they have guns in a locked compartment in their truck. The key is in the meth-manufacturing tent. But those facts are not really analogous to what we have here. They're not, but what it goes to is what is the court concerned about in each case. It varies based on the case. So let's go all the way down to Norwood. Norwood doesn't help us, but I think if you look at what the court was concerned with, it does. So Norwood, it's a domestic violence call. Police walk in. Mr. Norwood's lying on the bed. They arrest him. When they arrest him, they find on his person cash and drugs. When they search his bedroom, there's drugs and a firearm between the mattress and the box spring. What was Judge Tallman, at oral argument, what he was concerned about is that Mr. Norwood was found lying on that bed and could have easily reached down and grabbed that gun. What we have here, let's look at the facts that we have here. Well, yeah, let's look at them because a rational jury could easily conclude, in my view, that Mondragon prepared drugs for sale at his house with his loaded gun nearby for protection given that a large amount of drugs and cash that he possessed, Mondragon admitted to the and led the agents to a walk-in closet where they discovered a nine millimeter handgun inside a jacket pocket. Moreover, the gun was three to four feet away from a table containing methamphetamine packaging material, a cutting agent, a digital scale, and $3,100. The agents also recovered an additional 1,760 grams of methamphetamine from the attic space. So, you've got all of those. We've got all those and there's also a cutting agent and work kit with scales, the scales found in the kitchen where there was no firearm. There were 117 grams in the closet on the table. There were 1,700 grams found in the attic and there was... That's just all argument why you're asking a jury to find him not guilty when you're talking sufficiency of the evidence that we have to look at the inferences the jury could have made. What I'm asking this court to do is look at this more as a legal sufficiency argument. And to say as a matter of law with all those facts that it's insufficient. Well, but I think as a totality... As a step further than anyone's gone, right? I don't think so. I would disagree and here's why. If you look at the totality of the circumstances which this court has done in each one of its cases. You know that Mr. Mondragon was watched for 14 months by federal agents and he did four sales to a confidential informant and detectives on the stand said that not once was he armed during those transactions. Then on the fifth time in the 14th month, they set up another buy. And on his way to that buy, agents pulled him over, arrested him and all they found on his person was the methamphetamine that he planned to sell. There were no other drugs in the car. There was not a firearm on his person. There was not a firearm in the car. There was no holster. There was no ammunition. And that's why a jury could have found him not guilty. However, I think it goes back to in the legislative history. What Congress said is if this is like the Bailey case, which when they inserted the If, as in the Bailey case, we have someone in a car with a gun, with drugs, and all the government can bring forth is general evidence of an agent expert on the stand to say what drugs and drug traffickers and guns and that relationship, that that is insufficient. But counsel, setting aside the expert testimony, what do you do with this language in Norwood? And I'm reading from page 1072. The government has provided adequate evidence of a nexus between the firearm and the drug crime by showing that the firearm is in the same room and within easy reach of a substantial quantity of drugs and drug trafficking. Again, I would point you to what was the court concerned about in that case. And when that was presented at oral argument, what Judge Tolman was stuck on is the fact of the easily accessible firearm when police found him lying on the bed. That's the whole thing of that case. It doesn't apply just to those facts. But those facts are different in that Mr. Norwood was found on the bed near the gun and he could have easily reached it and shot who knows who coming through that bedroom door. In this case, Mr. Mondragon had been watched for 14 months, never armed and was pulled over unarmed on his way to do his drug trafficking. I see that I'm cutting into my rebuttal time. Can I answer any more questions before I sit down? It appears not. Thank you, counsel. We'll hear from the government. Good morning, your honors, and may it please the court. Teal Miller on behalf of the United States. The Norwood case controls the in furtherance question on appeal. As this court has recognized, it's a sufficiency of the evidence appeal. In the Neville's case, this court made clear that it looks at the facts in the light most favorable to the government. It resolves, it assumes the jury resolved any inferences in favor of the government and then it applies Jackson against Virginia. Could a rational trier of fact have found the essential element here? But counsel, wouldn't you agree that the facts in this case differ from the facts in Norwood? Your honor, the facts in this case fit squarely within Norwood's holding, which is that when the government shows the question was, do the facts in this, the facts in this case different than the facts in Norwood? Not in a meaningful way, because the nexus between the drugs in the closet and the gun in the closet is just as strong as it was in Norwood. The question is when the defendant was sitting at that drug processing table, was there a gun easily accessible to him? And the answer to that is yes, it was three to four feet away. But he wasn't at the time when the gun was discovered by the police. He was not, he was not lying on the bed. He wasn't near the drugs or the weapon. Why doesn't that make a difference in our analysis? Because the underlying drug trafficking offense here is possession with intent to distribute on March 1st, 2010. And that possession charge encompassed not just the moment of his arrest, but his possession of the drugs in the closet and in the attic of his house. And so he possessed the drugs in the closet and that was part of the drug trafficking, the underlying drug traffic offense. On that same day, the gun, he possessed the gun four feet away from those drugs. And Norwood makes clear and Lopez and Krauss makes clear that when you're looking at sufficiency of the evidence and a possession with intent to distribute charge, you have a substantial quantity of drugs, drug processing equipment, and a gun with an easy access of those drugs. You don't have to also show that the defendant was right there at that moment, just whether he was. In Norwood he was. I don't believe he was in Krauss. I think he was arrested in his home. But I don't think, I don't think it's possession in further and it's not. And we know he possessed it because he led the officers to it and acknowledged that it was in his home. Well, it's evidence of it. He didn't, he never quite admitted that, I guess. Well, the jury could have inferred it based on what he did admit. That's right. Yeah, but he never said the gun was his. He said there's a gun there, but he didn't say it was his. He didn't say the gun was his, but he did affirmatively say that the five pounds of methamphetamine in his attic was not his. And he, there's specific testimony that he never denied the gun was his. He also doesn't have to own the gun. We don't have to show that he had title to the gun. He just has to possess it. Do you need agent Joel's testimony for the in furtherance? I don't think we need it. It was helpful in the particular facts here because the argument that the defense was making was I went to this drug transaction without a gun. How could you find that I find that I possessed it in furtherance of? And so agent Joel explained why a drug dealer might make different judgments about when he wanted to possess a gun in furtherance of protecting his drugs. And when he thought he was better off without it. Is that sort of more than hypothetical? Is it sort of pushing the, I think the judge in the district court said, you're kind of pushing the envelope here. If you look at the colloquy at page 139 of the supplemental excerpts of record, you'll see that there was back and forth because the government was explaining, well, there's additional evidence. We haven't been allowed to get in about why he might not have taken a gun with him to this transaction having to do with his immigration status. And there was back and forth. The judge did say at one point you're pushing the envelope, but this is clearly within bounds under this court's Ancrum decision, which recognizes that as long as the agent is speaking in the second person and speaking of a hypothetical hypothetical drug dealer, it's fine to explain to the jury the methods of drug dealer might use in the judgments the drug dealer might use about when to possess a firearm and when not to. If we were to disagree with you, did you argue harmless error? Your Honor, we didn't make a specific argument with regard to harmlessness, but I do think that's preserved in our argument that there was sufficient evidence for the conviction. And in particular, as I've gone over that evidence, there's sufficient evidence with respect to both possession of the firearm and that the firearm was in for that. I also will say I don't think that this court can disagree with the district court's exercise of its discretion without creating a conflict with the Ancrum decision, which approves remarkably similar testimony. If this court has no further questions, we ask that the judgment be affirmed. It appears not. Thank you, counsel. Thank you. Just quickly, Your Honors, I would like to point out that there was, again, a work kit and scale seized by the government that was found in the kitchen. There was no chair at the table. There is no evidence that the locus of the drug activity was in that closet. There was a jacket hanging where a jacket ought to hang in the closet. The drugs, the majority of the drugs, were found in the attic where there was no firearm. This is not like Krauss. This is not like Mosley, where that was what the court called a cocked and ready-to-go firearm at the entrance to a stash house. It wasn't even a home. Could the jury have looked at—I mean, you say that because there was some in the kitchen, there was some in the attic, and that he denied that the stuff in the attic was his. Is it possible the jury could have thought that all the drugs in the house he had something to do with? I mean, what would have prevented them? I mean, that house was really full. It was, you know, ready to—had a lot of drugs. It had a lot of drugs. We're not disputing that, but what we are saying is that in like cases, the concern of the court is, was that firearm used in furtherance of either protecting or drug trafficking those particular drugs or the drugs that were found on Mr. Mondragon? And the answer here is no. The nexus to tie Mr. Mondragon to that firearm in furtherance of his drug trafficking is not there. Is it present? Congress said the presence of a firearm just because you're a drug trafficker is not enough. And what they suggest in the legislative history is general evidence of an expert for the government is not sufficient. What they say what could be sufficient is additional witnesses that actually tie the defendant to the in furtherance to make the nexus for the drug trafficking. At this point, I think I'd like to use the rest of my time to really talk about— You're actually over. Oh, I am. And it's in the red, you're over. I'm so sorry, Your Honor. I will finish there. I think you know the remedy we're looking for. No, you can have a closing statement. Thank you. We just believe that in the range of cases that this court has decided, I know this is a tough case when a jury has decided, but what we're saying, if you look at the legislative history, it wasn't legally sufficient to go to the jury. There wasn't enough evidence to prove the nexus. So we would ask this court to remand for resentencing and overturn the 924 conviction. Thank you very much. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision.
judges: Gilman, Rawlinson, Callahan